## STREETER *v.* SUMNER & *a.*

Though contracts of a bankrupt generally pass as property to his assignee, under the bankrupt law, yet this is not universally true.

Contracts continuing after the bankruptcy, and depending on the future personal services of the bankrupt, do not pass.

Contracts, which must be a charge upon, instead of a benefit to the estate, do not pass.

Contracts, which cannot be made available for the payment of the debts, do not pass.

A contract by a bankrupt before his bankruptcy, to move upon a farm of the defendants with his family, and to live there, and board the defendants' lumbermen, and keep his teams, for five or six years, the defendants agreeing to pay him extra prices, and to make him whole for any improvements he might choose to make upon the farm, had been in force two years before his bankruptcy; the assignee did not interfere, and the bankrupt continued to complete his part of the contract. *Held*, that the contract did not pass to the assignee, and the bankrupt might recover upon it.

ASSUMPSIT. The fourth count of the plaintiff's declaration was as follows:

For that heretofore, to wit, on the 20th day of February, A. D. 1839, the defendants being possessed of a certain farm situate in said Dalton, upon which said farm there was an opening of about fifteen acres indifferently cleared, and a small unfinished house, and also certain other timbered lots of land, which were situate near and immediately contiguous to said farm, from which said timbered lots of land the defendants were accustomed to draw pine timber in the winter season of each successive year, for several years, whereby it became and was then and there necessary that some family should reside upon said farm for the purpose of keeping the teams and boarding the hands of them, the defendants, while engaged in drawing timber from said lots of land in manner aforesaid, and the defendants, to induce the plaintiff to move with his family on to said farm for the purpose aforesaid, then and there, to wit, at said Dalton, on the day and year aforesaid, in consideration that the plaintiff

would move with his family on to said farm, and remain there five or six years, and keep the teams and board the hands of them, the defendants, while engaged in drawing timber from the lots aforesaid, in the manner aforesaid, undertook and faithfully promised the plaintiff that they would convey to the wife of the plaintiff fifty acres of land off from the Hildreth lot, so called, or any other lot the plaintiff should choose, in consideration of sums due from one Bond and one Farr, and pay him an extra price for hay and grain and board, which he might furnish for the purpose aforesaid, and that he, the plaintiff, might go on and improve said farm by clearing land, and building necessary fences and buildings thereon, and he should lose nothing thereby, but should be made whole therefor, that he might make as good a farm as he pleased, and as quick as he pleased, the quicker the better, and at the end of his term, or whenever he should become dissatisfied, if the defendants should fail to sell said farm to the plaintiff at a price so low that the plaintiff should be satisfied to purchase it, they, the defendants, would pay the plaintiff for all the improvements he should have made on said farm, and all that he, the plaintiff, should have made said farm better; and the plaintiff, confiding in the promises and undertakings of the defendants aforesaid, did, on said 20th day of February, A. D. 1839, remove with his family on to said farm, and remain on said farm for the purpose aforesaid until the winter of A. D. 1845, during all which term of time he, the plaintiff, kept the teams and boarded the hands of the defendants, whenever they were engaged in drawing timber from the lots aforesaid, and during that time he, the plaintiff, cleared a large amount of land on said farm, to wit, fifty acres of land, made and built a large amount of fences, built a barn, built a shed connected with said barn, repaired said house, dug and stoned a well, and put a pump into it, built a barn frame, furnished six thousand feet of boards and plank to cover and finish said barn frame, built a temporary wood shed in front of

said house, built a hog house, set out apple trees, and took care of a nursery, all on said farm, of great value, to wit, all of the value of twelve hundred and fifty dollars, by reason of all which improvements he, the plaintiff, made said farm very much better, to wit, the sum of twelve hundred and fifty dollars. Yet the defendants, their promise aforesaid wholly disregarding, and subtly contriving to deceive and defraud the plaintiff in this behalf, did not convey fifty acres of land to the wife of the plaintiff off from the Hildreth lot, or any other lot, and did not at the conclusion of the plaintiff's term, and when he had become dissatisfied with said farm, and with the price at which the defendants offered to sell it to him, offer to sell said farm to the plaintiff at a price so low that he, the plaintiff, was satisfied with, and at which he was induced to purchase it, nor did they pay, or offer to pay the plaintiff for said improvements, by the plaintiff so made on said farm, during the term aforesaid, in the manner aforesaid, nor have they paid the plaintiff for any improvements made on said farm during the term of time aforesaid, but, to the contrary, they have wholly failed to convey said fifty acres of land to the wife of the plaintiff, off from the Hildreth lot, or any other lot, and to offer to sell said farm to the plaintiff at a price so low that he, the plaintiff, was satisfied to purchase said farm at such price, and upon the plaintiff's becoming dissatisfied with said farm, and with the price at which the defendants offered to sell the same to him, the plaintiff, they, the defendants, utterly refused and still do refuse to pay the plaintiff for any improvements by him made thereon during the term of time aforesaid, or otherwise to make him whole in the premises, or to convey the fifty acres of land to the wife of the plaintiff off from the Hildreth lot, or any other lot, whereby and by reason of all which he, the plaintiff, hath suffered damage to the amount of fifteen hundred dollars.

And also for that the defendants, at Lancaster, in said county, on the 20th day of October, A. D. 1845, in consid-

eration that the plaintiff had before that time done and performed certain labor for the defendants, in clearing land upon the defendants' farm, building and repairing certain buildings and fences upon the defendants' said farm, digging and stoning a well, and putting a pump into it, setting out apple trees and taking care of a nursery upon the defendants' said farm, and doing and performing various other labor in clearing, cultivating and stocking down the land of the defendants' said farm, whereby the same, in consequence of the labor and improvement of the plaintiff, became and then and there was greatly increased in value, at the defendants' special instance and request, promised to pay the plaintiff so much money as the said labor and improvements were reasonably worth, and the plaintiff avers that said labor and improvements was reasonably worth the sum of twelve hundred and fifty dollars.

Other counts on an account annexed and for money had and received, are substantially founded on the same matters as the fourth count.

The action was referred to auditors, who made a report, finding a sum due the plaintiff; and the same being recommitted to them for that purpose, made an additional report, as follows:

Additional report of the auditors in the action, *Ezekiel Streeter*, plaintiff, v. *David H. Sumner & a.*, defendants, by order of court.

The auditors find that the amount they have allowed the plaintiff accrued to the plaintiff within six years next before the commencement of the plaintiff's action, and that all allowed the plaintiff, accrued to the plaintiff since June 22, 1842.

They also find that the plaintiff was declared a bankrupt, by a decree of the proper court, June 22, 1842, on an application made by the plaintiff himself.

The auditors allowed the plaintiff nothing before said June 22, 1842, having disallowed all before that time.

It also appeared that this suit had been in no way countenanced or assented to by the assignee.

Certain objections and positions were taken by defendants' counsel, at the time of the hearing, which were as follows:

1st. The defendants objected, that the proof was of a conditional promise, and that the allegation in the special count was of an absolute promise to make the plaintiff whole.

The auditors state that the following was the evidence before them as to the absolute promise, stating merely the evidence on this point only to the court. The facts sworn to before them were as follows, to wit: If at the close of five or six years Streeter did not choose to stay, or if at any time Streeter was dissatisfied, Sumner would pay him for his betterments, and make Streeter whole in every respect. Also as follows, to wit: Mr. Sumner said that Streeter should lose nothing by going in, that he, Sumner, would make him, Streeter, whole in every respect.

The auditors found, from the facts proved, that the contract was fully sustained on this point.

2d. The defendants also took the position that the original contract, as sworn to by the plaintiff, was, that the defendants should reserve the pine timber, whereas the contract alleged was a contract to convey the whole farm.

The auditors find that the plaintiff, in his examination in chief, (after speaking of long conversations and different conversations he had with the defendants, before contract was made,) finally swore to a contract substantially as is alleged in the plaintiff's writ. That in cross-examination by the defendants, plaintiff stated, among other matters, as follows, to wit; we use his words: " Mr. Sumner told me he should reserve the pine timber."

The auditors did not find that this was any part of the original agreement finally entered into and agreed to by

both parties. It did not appear in evidence that this was part of the final agreement.

3d. In cross-examination of one of the defendants' witnesses, the plaintiff offered to show, as affecting the credibility of the witness, his transactions with the defendants, and offered it expressly for that purpose, and no other.

The defendants objected to all the evidence offered, particularly in regard to all arrangements of the witness and Sumner, as to these farms, and to the testimony of the particular terms of the agreement.

The auditors ruled in for the aforesaid purpose only what evidence the plaintiff saw fit to put in at his own risk.

The following facts were testified to by the witness, all after the objection, as follows; we use the words of the witness, as minuted down at the time: " I moved on to the mountain, on to Mr. Sumner's place; it is none of your business on what conditions I went on there; I bought the place; no writings were made; no price was agreed on; I knew what his price was, and nothing was said about it; there were no buildings there; I built a barn and what I called a house; I left because I was so poor I could not stay there; I moved from there on to the river in Dalton; I did not purchase any place; I went on to Mr. Sumner's land; I do not live there now; I did not take the house; I took a job of Mr. Sumner, and he found me a house; I moved off from it, (the hill lot,) there were no conditions about it; I do not know on what conditions I left it; I could not tell the time I was there; [I received fifty dollars for my betterments."]

The witness testified to all the foregoing evidence, in answer to questions asked by plaintiff's counsel, except that part enclosed in brackets, as follows, to wit: " I received fifty dollars for my betterments." The witness volunteered that expression, without being asked it by plaintiff or his counsel. Immediately on his making the said statement, that he had received fifty dollars for his betterments, Mr.

Bellows, defendants' counsel, arose and said " that was certainly objectionable," to which Mr. Cooper, plaintiff's counsel, replied, that the witness made that remark without being asked by him, (he then being the one examining the witness,) and the fact being so, it was so noted by the auditors, and the part enclosed in brackets was understood by the auditors as not offered by the plaintiff, and was treated by them as no evidence in the case.

4th. The defendants excepted, that there was no new contract after plaintiff's bankruptcy, and unless the one made in February, 1839, was in force, the plaintiff was on said farm, after said bankruptcy, without any contract, and that the contract of 1839 was entire and indivisible, and vested wholly in plaintiff's assignee, and that all plaintiff did after bankruptcy was without any contract between the plaintiff and the defendants.

It was found that a special contract was made in February, 1839, substantially as is alleged in plaintiff's writ, and that this was before the plaintiff's bankruptcy.

It was proved that no new express contract, in words, was made after the plaintiff's bankruptcy. It was proved that plaintiff went on to the farm in February, 1839, and remained there till February, 1846. It was proved that plaintiff continued working and improving defendants' land, as is charged in plaintiff's writ, after bankruptcy, the same as he did before bankruptcy, and with the knowledge and express as well as tacit consent and understanding of defendants. Also, that defendants, after plaintiff's bankruptcy, settled and accounted with and paid plaintiff for articles, which articles, if said contract of 1839 was then in existence, would have been embraced in its terms, and settled and accounted on a principle similar to the terms of the contract made in 1839, aforesaid, and that all acts and doings of the parties were similar, after bankruptcy of plaintiff, to what they were before. And that the defendants took to themselves, on plaintiff leaving said farm, the benefit

of all the plaintiff's work, labor, improvements and materials, done, performed and left on defendants' premises aforesaid, by the plaintiff.

Also, declarations of defendants were proved, made after bankruptcy of the plaintiff, that the defendants were to pay the plaintiff for his betterments, and were to pay him extra prices for hay and grain.

It was proved that there was a part performance, before plaintiff's bankruptcy, of the contract of 1839, by improvements made by him, by going on to the farm as aforesaid. And it was also proved that the parties had, in 1840, settled the Bond and Farr money, by allowance in account to plaintiff by defendants, and plaintiff, in 1840, gave up all right to Hildreth lot.

The auditors found, from the foregoing facts proved, that the contract of 1839 was subsisting between the parties after plaintiff's bankruptcy, if it might be continued, renewed and confirmed by acts and deeds, and by a tacit understanding of the parties, without express words; where there was bankruptcy and a part performance of the contract before bankruptcy proved.

The auditors found that the parties understood that the contract of 1839 was subsisting and in force between them, after plaintiff's bankruptcy.

The auditors also found that the defendants were liable to the plaintiff, under the general counts, and the account annexed, if, under the circumstances before stated, the plaintiff's bankruptcy put an end to the original contract, as between these parties.

No exception was taken to the form of this report, any objections on that account being waived by agreement of parties.

The plaintiff moving that said report be accepted, it is, by agreement of parties, ordered that the case be transferred to the superior court, for the determination of the questions arising on said additional report.

---

*H. A. & W. J. Bellows,* for the defendants.

The plaintiff can recover only under the fourth count. The case and the report show that whatever was done by plaintiff, was under the contract set up in the fourth count. The case finds that all the other counts are substantially founded on the same matters as the fourth count; under the general counts there can be no recovery. That question has been already distinctly settled in this case.

Then, as to the fourth count, we say that by the bankrupt law, this contract, and every thing arising out of it to the plaintiff, vested, by the decree of bankruptcy, in the assignee. U. S. Bankrupt Law of 1841, § 3; U. S. Stat. at large 441. The terms of this statute are broad enough to vest every thing, and give the right to the assignee to sue for and defend those rights. This contract, then, passed to him just the same as if in writing, as if by bond. *Ex parte Fuller,* 2 Stor. 327. Improvements on lands owned by the government, are regarded as property, and will pass to the assignee, under the decree of bankruptcy, and a note given to the bankrupt, after the decree, for these improvements, was held to be without consideration. 7 U. S. Dig. 86, § 125; *French* v. *Carr,* 2 Gilm. (Ill.) 664; *Ex parte Fuller,* 2 Stor. 360; *Hammond* v. *Rice,* 18 Vt. Rep. (3 Wash.) 353; *Burton* v. *Lockert,* 4 Eng. (Ark.) 411; 10 U. S. Dig. 65, § 81; *Strong* v. *Clausen,* 5 Gilm. (Ill.) 346; 10 U. S. Dig. 65, § 82; *Moore* v. *Jones,* 23 Vt. Rep. (8 Wash.) 739.

English statutes of bankruptcy are like ours, substantially. 1 Har. Dig. 344, 352, 912, 932, as to choses in action. See *Mitford* v. *Mitford,* 9 Ves. 100.

A sole trader having agreed, in consideration of a sum payable by instalments, to take two persons into partnership with him for eighteen years, and having become bankrupt in five months after the commencement of the partnership, his assignees are entitled to receive the sums due. *Akhurst* v. *Jackson,* 1 Swanst. 85; 1 Har. Dig. 352, 930.

A. was entitled to a commission for introducing to a

tradesman a purchaser for his business, which was to be paid on the completion of the bargain. After he had introduced the purchaser, but before the matter was settled, he became bankrupt, and his assignees brought an action for the commission, which they afterwards discontinued, and wrote to him, saying that they disclaimed all right to the money. A., upon this, brought an action in his own name. Held that he was not entitled to recover. *Hillary* v. *Morris*, 5 C. & P. 6, per Lord *Tenterden.*

An annuity given to A., for his personal support, not to be liable to his debts, and to be paid from time to time into his proper hands, and not to any other person, and his receipt only to be a sufficient discharge, passes to his assignees. *Graves* v. *Dolphin*, 1 Sim. 66; 1 Har. Dig. 355; *Schoncler* v. *Wace*, 1 Camp. 487.

The contract, then, vests in the assignee, and it is not divisible, but entire. The discharge of this contract by the bankrupt would be no consideration for a promissory note of defendants, as in *Furber* v. *Carr.* So the assent of defendants to plaintiff's continuing on after the bankruptcy, would avail nothing to reässign the contract. Inference is that what bankrupt did was for assignee. See *Leavitt* v. *Baldwin*, 4 Ed. Ch. 289; 11 U. S. Dig. 62. No new contract is pretended, and the auditors find the old one subsisting, and so only assignee can sue. There could be no new contract in terms of the old one, and that is not pretended.

*Cooper*, for plaintiff.

I. Can the statute of limitations run against the amended count, when it is for the same cause as the account annexed? The cause of action must have been the same, or the amendment would not have been admissible. *Butterfield* v. *Haverhill*, 3 N. H. Rep. 200; *Merrill* v. *Russell*, 12 N. H. Rep. 74. The filing of the new count relates back to the commencing the suit. *Dartnall* v. *Howard*, 2 Chitt. Rep. 28.

II.   Can it make any difference whether the suit was countenanced or assented to by the assignee ?   We contend, first, that if the assignee did not interfere, and take some active measures, that the defendants could not, in this stage of the proceedings, and in this manner, object, on the ground that it was not in the name of the bankrupt.  *Fogg* v. *Willcut*, 1 Cush. 300.   Secondly, that whatever the plaintiff recovered, would be recovered as trustee of the assignee; and, thirdly, that the objection does not apply to this case, for the report finds that the amount allowed the plaintiff accrued since the decree of bankruptcy.

III.   Was the allegation absolute or conditional in regard to the defendants' making the plaintiff whole ?   It is a sufficient answer to this objection, that the auditors find and report no variance in the allegation and proof.

IV.   In regard to the reservation of pine timber, reserved by the contracts.   Sumner told plaintiff, in some of the many conversations that were had, that he should reserve the pine timber.   But the auditors did not find that this was any part of the original agreement finally entered into, and agreed to by the parties; and they also find that it did not appear in evidence that it was a part of the final agreement.

V.   Was the cross-examination of the defendants' witness, as detailed by the report, objectionable ?   First, there was nothing elicited from the witness of any materiality, except, perhaps, the expression volunteered, and this could not set aside the report.   Secondly, the expression volunteered was treated by the auditors as no evidence in the case.

VI.   Were the auditors justified in finding that the contract of 1839 was subsisting, continuing and binding, after the bankruptcy, without a renewal by express terms ?   1st. The report finds that plaintiff continued working and improving defendants' lands, after bankruptcy, the same as before, with the knowledge and express consent of the defendants.   2d.   It is implied from this that the contract was

Streeter *v.* Sumner.

partly performed before the bankruptcy, and partly afterwards. 3d. The assignee had no cause of action, because the contract was not executed by the plaintiff, at the time of his bankruptcy. 4th. The defendants, after the bankruptcy, settled and accounted with the plaintiff, on principles similar to the terms of the contract. 5th. That all acts and doings of the parties were similar after bankruptcy as before. 6th. The report also finds that there was a part performance of the contract, before the bankruptcy. 7th. That the contract was subsisting after the bankruptcy, by acts, deeds, and the understanding of the parties, if such could be the case, *without express words.*

From the facts reported, we say that the parties gave a practical construction to the contract, after the bankruptcy, and renewed and confirmed by their acts and deeds the contract, as strongly as they could by any express words.

We also contend that the facts detailed would warrant a jury in finding a verdict establishing the contract, or that a court upon a case made by the parties, setting forth the same facts reported by the auditors, would find, as a matter of law, that the contract was either continued and confirmed, or renewed. *N. H. Iron F. Co.* v. *Richardson*, 5 N. H. Rep. 294.

An agreement may be proved by direct evidence, or by proof of facts. *Warren* v. *Batchelder*, 15 N. H. Rep. 136. From the facts found, the auditors find that the contract subsisted, as set forth in the amended count, and their finding cannot be disturbed, as that was clearly and legitimately within the sphere of their duty.

In another aspect of the case, if the bankruptcy put an end to the contract, the defendants are liable on the original counts, for the amount found by the auditor.

*Fletcher*, for the plaintiff.

One question in this case is whether the plaintiff can sustain the action, having been declared a bankrupt.

If an assignee had interfered, there might be some doubt, but the case finds that the assignee did not in any way interfere in the suit.

If a bankrupt contracts in behalf and for the benefit of his assignees, he may sue in his own name, and it is no plea that the property vested in the assignee, unless it contains an averment that he has interfered, and desired the defendant to pay him. *Herbert* v. *Sayer*, 5 Ad. & El. N. S. 965.

The bankrupt has a right to after acquired property, against every body but the assignees. *Fowler* v. *Down*, 1 B. & P. 44.

The bankrupt can sue in his own name, under a contract with him, if the assignees do not interfere. Holt N. P. C. 172.

The bankrupt may sue as the trustee of the assignee. Holt N. P. C. 172.

And it is of no consequence to the defendants whether the bankrupt shall put the money into his own pocket, or pay it over honestly to whom it has been legally and equitably transferred. The acts of the bankrupt, in sueing, would be binding on the assignee, unless he disaffirmed them, and those acts would be binding, up to the time they were disaffirmed. *Herbert* v. *Sayer*, before cited. See also *Drury* v. *Vannevar*, 5 Cush. 442; *Stone* v. *Hubbard*, 7 Cush. 597.

A recovery in this action would be a good bar to any other suit, and the assignee would be concluded by the judgment.

The defendants' view is not founded in equity or justice. It is to say that a party can have no benefit of any contract made by him before bankruptcy, whether they are capable of being beneficial to others or not.

If the bankrupt complete the performance of such a contract, he can derive no benefit from it. The language of the act may extend to every thing; a reasonable construction would confine it to contracts having some value to his creditors.

Streeter *v.* Sumner.

If the assignee has the sole interest, another may be a trustee for him, and as such maintain an action.

The cases cited for the defendant do not apply to the present. In all their leading circumstances, they have no resemblance.

BELL, J. The principal question, presented by this case, relates to the effect of the assignment of the plaintiff's property under the bankrupt act, upon the contract declared on in this case. It is contended by the defendants that all right and claim under this agreement was divested from the plaintiff, and vested in the assignees, and, consequently, that they alone can maintain the action. If that is a correct view of the law, as it is expressly found that the assignee does not assent to nor encourage this suit, the plaintiff has no right of action.

By section 3 of the bankrupt law, it was enacted " that all the property and rights of property, of every name and nature, and whether real, personal or mixt of every bankrupt, (except as is hereinafter provided,) who shall, by a decree of the proper court, be declared to be a bankrupt within this act, shall, by mere operation of law, *ipso facto*, from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment or other conveyance whatsoever ; and the same shall be vested by force of the same decree, in such assignee as may be from time to time appointed by the proper courts for this purpose. * * * And the assignees so appointed, shall be vested with all the rights, titles, powers and authorities to sell, manage and dispose of the same, and to sue for and defend the same, subject to the orders and directions of said court, as fully, to all intents and purposes, as the same were vested in, and might be exercised, by such bankrupt before or at the time of his bankruptcy, declared as aforesaid."

This statute provision is very broad, embracing *all property and rights of property.* If the contract, which is

the subject of this suit, is *property*, or a *right of property*, within the meaning of this act, it has been by law divested from the plaintiff and vested in the assignee, and the plaintiff cannot maintain this action upon it.

As the general rule, contracts to be performed to a party, and his rights of action, are deemed property ; and such contracts and rights of action pass, by the operation of the bankrupt law, to the assignee, for the benefit of the creditors. But to this general rule, we conceive, there must be many exceptions; some from the nature of the contracts and some from the nature of the interests involved. While others cannot be deemed property, because they subject a party to what may more properly be regarded as a burden than a privilege, where the assignee, from the conditions of the contract, can derive no benefit for the creditors, and may subject the estate to loss, if he assumes the contract.

Of the first class may be instanced the case of a contract of a lady to marry the bankrupt. Such a contract may be very desirable, and, in one sense, very valuable to the bankrupt, but is in its nature personal, and incapable of assignment. It cannot be sold like a note or bond, at auction or at private sale, and a purchaser thereby be enabled to enforce its performance for his own benefit. The creditors cannot derive any benefit to themselves from the legal transfer of such a contract, to their representative, the assignee. And, therefore, it seems to us not property, nor a right of property in the sense of the law. *Moore* v. *Jones*, 23 Vt. (8 Wash.) Rep. 744.

The case of apprentices seems to be of the same class. The equivalent for the services of the apprentice is the instruction of a skilful workman, a personal service of the bankrupt master, which a purchaser often could not render at all, and where the attempt to transfer the indenture, without the assent of the apprentice, would merely annul the contract.

Of the same kind would probably be a contract of the

bankrupt to render his personal services, where the employer has stipulated in advance for his compensation. Such a contract cannot be transferred by the party himself, much less by his assignee, because the consideration for the pay is exclusively personal, and, in many instances at least, could not be performed by another, and the employer may accept the services of another or not, at his election.

Pensions granted by the government for military services, would probably not be divested from the pensioner, as they are made by statute inalienable. The law in England seems otherwise.

Of the second class would be the case of contracts respecting trusts, where the nature of the interests of the bankrupt and others, in the property affected, would prevent any advantage accruing to the creditors from divesting the property from the bankrupt, or vesting it in the assignee. In such case, it would be inconsistent with any useful purpose, or with any purpose contemplated by the bankrupt act, to hold that the property passed to the assignee. Eden on Bankruptcy 244; *Winch* v. *Keeley*, 1 D. & E. 619; *Carpenter* v. *Marnell*, 3 B. & P. 40; *Ex parte Chion*, 3 P. W. 187; *Shaftsbury* v. *Russell*, 1 B. & C. 666; *Farr* v. *Newman*, 4 D. & E. 629; *Howard* v. *Jemmet*, 3 Burr. 1369.

In *Scott* v. *Surman*, Willes 402, *Willes*, C. J., says: " Assignees, under a commission of bankruptcy, are not to be considered as general assignees of all the real and personal estate, as heirs and executors are of the estate of their ancestors and testators, but that nothing vests in these assignees, even at law, but such real and personal estate of the bankrupt in which he had the equitable as well as legal interest, and which is to be applied to the payment of the bankrupt's debts." *Gladstone* v. *Hadwen*, 1 M. & S. 517; Eden Bankruptcy 244; see *Arden* v. *Watkins*, 3 East 317.

Of the remaining class spoken of, that which cannot be regarded as property, because it is, from the character of the stipulations and the relations of the values concerned, a bur-

den rather than a benefit, may be named the case of leases upon unfavorable terms. As where, for example, the rent equals or exceeds the real as well as the market value of the property. It may be a desirable lease for the bankrupt, while in business, because of his own wants, or those of his family, but it cannot be sold or assigned, so as to contribute any thing to the payment of the debts of the bankrupt. So a lease may be on such terms as to prove a burden and loss to the creditors, if the assignee is compelled to take it. Such a lease cannot be considered as property for this purpose. In England, the assignee is allowed a reasonable time to ascertain the value, and is allowed an election in behalf of the creditors, to accept the assignment or to refuse it. An actual transfer is required by the law there, which cannot be effectual without an acceptance, real or supposed, by the assignee. *Copeland* v. *Stephens*, 1 B. & A. 593 ; *Thomas* v. *Pemberton*, 7 Taun. 206 ; *Hanson* v. *Stephenson*, 1 B. & A. 303 ; *Hope* v. *Booth*, 1 B. & A. 505, and other cases, 1 Har. Dig. 919 ; Eden Bankruptcy 237.

Upon the same principle, the assignee must be understood to have an election as to contracts of every kind, to repudiate and reject the assignment, if the contracts, by their continuance, seem likely to subject the available estate to future losses.

By the late bankrupt law, no assignment, in fact, is required ; every thing which can properly be deemed property, passed to the assignee by force of the law ; but, we think, this circumstance makes no difference. The English assignee rejects agreements likely to prove onerous in future, because they are not property, within the intention of the law, but merely incumbrances upon the available assets of the bankrupt. Here the contract should be held not to pass to the assignee, not to be divested from the bankrupt, because it is not property available for the payment of the debts. *Scott* v. *Surman*, before cited.

In some cases, the burdensome character of contracts, as leases, for example, may be at once obvious. In others, it

may be a matter of doubt and uncertainty, requiring careful inquiry and consideration ; the statute operates upon all property, *ipso facto*, upon the decree of bankruptcy, and at once, but for the assignee to determine the question whether the contract is property or only a charge upon the other estate, may, and often must, require time. But whenever it appears that a contract must prove a burden in future, if the assignee assumes the obligations of the bankrupt, it must be regarded as not being property within the meaning of the bankrupt law.

In cases of doubt, the assignee, if called upon to perform the bankrupt's obligations, accruing after the bankruptcy, may be required to show that he was not bound to accept the property, and that he had rejected it.

Where the right of the bankrupt himself is involved, as where a claim is made upon him for neglecting, after the bankruptcy, to perform his stipulations, or where the bankrupt brings an action for the neglect of the other party to perform his part of the contract, such direct evidence may not be in the power of either party, but either may be compelled to rely on such evidence as the case admits of, to show that the contract was worthless to the assignee and to the creditors.

Of such evidence, none would usually be more satisfactory and convincing than the fact that the assignee, being fully aware of the contract, has closed up the settlement of the estate, without in any way intermeddling with the contract. If the evidence also showed that the contract was one from which the creditors could probably have derived no benefit, and by which they might be exposed to loss, the conclusion would be much strengthened.

In the present case, the contract was unavailable to the assignee and to the creditors, first, because it was a stipulation for the personal services of the plaintiff and his family. It had no assignable value, because the defendants were not bound to accept the services of any other man, or of any

---
---

other family, in exchange for his, because any payment to be made depended upon himself and his family continuing, for the period of five or six years, to live in that place, and board certain people, &c., which the assignee had no right to require them to do, nor funds to persuade them, because the amount to be paid depended upon the discretion of the plaintiff, as to the nature and kinds of improvement he would choose to make; a discretion not to be exercised by any other in his stead, and because the compensation was to be merely an equivalent for the services, from which a third person could derive no advantage; a very poor and hard bargain, at best, to say nothing of the probability, from its loose character, of a troublesome litigation, before any thing could be realized.

The assignee seems wisely to have left such a contract to the parties themselves.

The two cases, cited in the defendant's argument, (*Akhurst* v. *Jackson*, 1 Swanst. 85, and *Hillary* v. *Morris*, 5 C. & P. 6,) show nothing against the view we have presented.

So far as appears, the first was a perfect contract, entirely completed on the part of the bankrupt, who had done all he agreed, and nothing remained to be done but the payment of the money. The other was a case where the bankrupt had performed all he was to do, before his bankruptcy occurred, though it was then contingent whether a bargain would be closed, until which he was not entitled; but a bargain being subsequently closed, the money became due, and the assignees, under the English statutes, clearly became entitled to receive it. The only point of this decision seems to be, that a mere disclaimer of all right to a debt will not revest in the bankrupt a right to maintain an action.

The case of *Schondler* v. *Wace*, 1 Camp. 487, the case of a policy on a life, where there were considerable arrearages, has no analogy to the present. A policy has often, perhaps generally, a value upon a surrender, and is always assignable, because the premiums may be paid by any one.

These cases may be available to show that if the contract, in this case, once vested in the assignee, his assent to the bankrupt's remaining on the place would not revest the contract in him.

The cases of *Herbert* v. *Sayer*, 5 Ad. & El. N. S. 965, and *Stone* v. *Hubbard*, 7 Cush. 597, do not reach the point involved in this case. The first holds that, in case of a contract, entered into by a bankrupt after a *fiat*, he may sue in his own name, and his bankruptcy is no objection, unless the plea shows that the assignee has interfered. The present is a case of contract before bankruptcy. Upon the ground assumed, that here was a renewal of the contract between the bankrupt and the defendants, resulting from their acts and apparent common understanding, it is an authority to the point that the bankrupt might sue on such new contracts, unless the assignee interferes.

The other holds that suit may be brought by the assignee in bankruptcy, or by an assignee before bankruptcy, in the name of the bankrupt. The right of the defendants cannot be prejudiced by such suit. The court speak of the English decisions, that, after bankruptcy, no action can be brought in the name of the bankrupt, upon a contract entered into before his bankruptcy. They are said to be founded on the language of the English statute, by which assignees are empowered to sue in their own names, and it is provided that "neither the bankrupt, nor any person claiming through or under him, shall have power to recover the same."

There is no such negative provision in the bankrupt law of the United States. This provision explains the decision in *Hillary* v. *Morris*, as well as the want of English cases on the general subject. *Drury* v. *Vannevar*, 5 Cush. 442, is full to the point, that an assignee of the bankrupt's assignee may sue in the name of the bankrupt.

The other points raised are answered by the finding of

the auditors, except that relating to a new contract, which
is susperceded by our view of the case.

*Objections to report overruled.*